IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | |
| | ) | |
| QUALIA CLINICAL SERVICE, INC., | ) | |
| | ) | CASE NO. BK09-80629-TJM |
| Debtor(s). | ) | A09-8041-TJM |
| RICK D. LANGE, Trustee of the Chapter 7 | ) | |
| Bankruptcy Estate of Qualia Clinical | ) | |
| Service, Inc., | ) | |
| | ) | |
| Plaintiff, | ) | CH. 7 |
| | ) | |
| vs. | ) | |
| | ) | |
| INOVA CAPITAL FUNDING, LLC, and | ) | |
| INOVA CAPITAL FUNDING, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

This matter is before the court on cross-motions for summary judgment by the defendants (Fil. #32) and the Chapter 7 trustee (Fil. #37). Brian S. Kruse represents the Chapter 7 trustee, and Brandon R. Tomjack represents the defendants. Evidence and briefs were filed and, pursuant to the court's authority under Nebraska Rule of Bankruptcy Procedure 7056-1, the motions were taken under advisement without oral arguments.

As explained below, the defendants' motion is denied and the trustee's motion is granted.

In December 2007, Qualia Clinical Service, Inc., entered into an arrangement with Inova Capital Funding by which Inova purchased certain accounts receivable from Qualia. This adversary proceeding is premised on the alleged preferential transfer that occurred when Inova filed a U.C.C. financing statement within 90 days of the filing of Qualia's Chapter 11[1] bankruptcy petition. The trustee moves for summary judgment in full or in part, with a finding that the invoice purchase agreement is a financing arrangement and not a true sale, and that Inova's lien is avoidable as a preference.

Inova moves for summary judgment on the basis of an absolute defense under 11 U.S.C. § 547(c)(5), which protects the transfer of a security interest in after-acquired property if the transferee does not improve its position within the preference period. Inova argues that it was fully secured on the 90th day before bankruptcy, on the dates of transfers during the preference period,

---

[1]The case was converted to a Chapter 7 in October 2009 at the request of the United States Trustee, and Rick Lange was appointed as trustee.

and on the date it filed its U.C.C. financing statement, and therefore could not have improved its security position to the detriment of unsecured creditors.

Summary judgment is appropriate only if the record, when viewed in the light most favorable to the non-moving party, shows there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c) (made applicable to adversary proceedings in bankruptcy by Fed. R. Bankr. P. 7056); see, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986). The court must examine the record to ascertain whether the movant, through depositions, answers to interrogatories, admissions, affidavits, and other evidence, has demonstrated the absence of a genuine issue of material fact. Beard v. Banks, 548 U.S. 521, 529 (2006). If the movant has done so, then the non-moving party, bearing the burden of persuasion, must by affidavit or otherwise set forth specific facts showing that there is a genuine issue for trial. Id. The court does not weigh the evidence, make credibility determinations, or attempt to discern the truth of any factual issue. Great Plains Real Estate Dev., L.L.C. v. Union Cent. Life Ins. Co., 536 F.3d 939, 943-44 (8th Cir. 2008). An issue is genuine if it has a real basis in the record, and a genuine issue of fact is material if it might affect the outcome of the suit. Hartnagel v. Norman, 953 F.2d 394, 395 (8th Cir. 1992). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Blocker v. Patch (In re Patch), 526 F.3d 1176, 1180 (8th Cir. 2008) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). In ruling on a motion for summary judgment, the court must view the facts in the light most favorable to the party opposing the motion and give that party the benefit of all reasonable inferences to be drawn from the record, without resorting to speculation. Hitt v. Harsco Corp., 356 F.3d 920, 923-34 (8th Cir. 2004).

The following facts are uncontroverted or otherwise established for purposes of these motions:

1. Qualia is a Nevada corporation with its principal place of business in Omaha, Nebraska.

2. Inova Capital Funding, Inc. ("ICF, Inc."), was incorporated in California on January 4, 2007.

3. Inova Capital Funding, LLC ("ICF, LLC"), was formed in Delaware on September 30, 2008.

4. On December 11, 2007, Inova Capital Funding ("Inova") and Qualia entered into a contract entitled "Invoice Purchase Agreement," whereby Inova agreed to purchase "acceptable accounts receivable at a discount below the face value thereof."

5. A U.C.C. financing statement naming ICF, Inc., as the secured party and Qualia as the debtor, covering accounts, inventory, instruments, records, general intangibles, etc., was filed with the Nebraska Secretary of State on December 12, 2007.

6. A U.C.C. financing statement naming ICF, Inc., as the secured party and Qualia as the debtor, covering accounts, inventory, instruments, records, general intangibles, etc., was filed with the Nevada Secretary of State on February 19, 2009.

7. Qualia filed its bankruptcy petition on March 18, 2009.

With regard to the identity of the appropriate defendant, the Inova entities suggest that ICF, LLC, is the successor in interest to ICF, Inc. However, there is no credible evidence in the record to support that assertion. Moreover, it appears ICF, Inc., continues to exist. That is the entity which filed the U.C.C. financing statements, so for purposes of this order, "Inova" will be used in reference to ICF, Inc., as well as the entity that executed the invoice purchase agreement.

The court has considered – and deferred – on at least two occasions the issue of whether or not the purported factoring arrangement at issue here is a true sale.[2] The context here requires a resolution of that issue.

"Under general principles of contract law, the meaning of an unambiguous contract presents a question of law appropriate for summary judgment. However, the interpretation of an ambiguous contract presents a question of fact, thereby precluding summary judgment." Erker v. Am. Cmty. Mut. Ins. Co., 663 F. Supp. 2d 799, 805 (D. Neb. 2009) (internal citations omitted).

The court's first step must be to ascertain whether the contract is ambiguous. Kluver v. Deaver, 714 N.W.2d 1, 5 (Neb. 2006). A contract written in clear and unambiguous language is not subject to interpretation or construction and must be enforced according to its terms. Id. A contract is ambiguous when a word, phrase, or provision in the contract has, or is susceptible of, at least two reasonable but conflicting interpretations or meanings. Thirty LLC v. Omaha Hous. Auth., 771 N.W.2d 165, 172 (Neb. 2009) (citing Lexington Ins. Co. v. Entrex Comm. Servs., 749 N.W.2d 124 (2008)). That the parties to the contract suggest opposing interpretations of the contractual language does not necessarily compel the conclusion that the instrument is ambiguous. Boyles v. Hausmann, 517 N.W.2d 610, 615 (Neb. 1994). A contract must receive a reasonable construction, and a court must construe it as a whole and, if possible, give effect to every part of the contract. Baker's Supermarkets, Inc. v. Feldman, 502 N.W.2d 428, 433 (Neb. 1993).

The invoice purchase agreement on its face and by its terms is clear and unambiguous. It is, in substance, a financing arrangement. The most salient support for that conclusion is Inova's recourse against Qualia for any uncollected invoice:

---

[2] See, e.g., Order entered July 7, 2009 (Fil. #141 in Case No. BK09-80629-TJM) ("Pursuant to the practice of the parties prior to bankruptcy and the literal language of the contract between the parties, the arrangement is an outright sale and purchase of receivables. . . . [U]ntil the preference action is determined in favor of the debtor, the debtor has no right to interfere with the collection activities of Inova.") and Order entered Sept. 1, 2009 (Fil. #20 in Adv. Proc. No. A09-8041-TJM) ("The agreement's scope and nature were not at issue in the context of [the motion to enforce sale procedures in the bankruptcy case], and the statements made in that order did not settle the issue of whether the agreement was a sale or a financing arrangement.").

>   7.02 RECOURSE. This is a full recourse agreement. As such, ICF may charge back to [Qualia] and [Qualia] shall repurchase from ICF (by paying to ICF the full amount owed by the customer on the account) any account for any of the following reasons:
>
>>   7.02.01. [Qualia] has breached any warranties or promises in this agreement with regard to the account or is otherwise in default under this Agreement;
>>
>>   7.02.02 [Qualia] has contributed to, or aggravated a customer Credit Problem with respect to the account;
>>
>>   7.02.03 [Qualia] and customer are involved in a dispute of any kind, regardless of validity, with respect to the account;
>>
>>   7.02.04 Customer asserts a claim of loss or offset of any kind against [Qualia] or ICF with respect to the account;
>>
>>   7.02.05. An account is deemed mistaken, incorrect, fraudulent and/or erroneous by ICF; or
>>
>>   7.02.06. [T]he full amount of the account is not paid to ICF within the number of "Chargeback Days" from the date of purchase by ICF specified in the Rate Schedule.

Invoice Purchase Agreement ¶ 7.02, at 6 (Ex. A to Fil. #1).

This provision completely shifts the risk of the uncollectibility of the account to Qualia, despite the agreement's characterization as a "sale." If it were a true sale, Inova would accept the accounts as they were, collectible or not. The Fourth Circuit Court of Appeals recently found a farm products "factoring agreement" with full recourse provisions to instead be a loan transaction structured as a sale:

>   [U]nder the terms of the documents, Robison Farms did not enter into a traditional factoring arrangement in the sense that it transferred the risk of the noncollection of the accounts receivable to AgriCap. Rather, under the transaction, virtually all of the risk of noncollection remained with Robison Farms. The Factoring Agreement ensured that AgriCap had almost total recourse against Robison Farms if a receivable went unpaid. . . . Under [the contract's recourse] provision, AgriCap had the right to demand that Robison Farms "repurchase" any receivable that went unpaid or was disputed.
>       . . .
>   Insofar as the most likely reasons for nonpayment by an account debtor would be that it did not have the money or that it disputed the debt, the district court was justified in finding that the agreement between the parties in this case effectively insulated AgriCap from loss and was therefore a loan rather than a factoring sale.

Nickey Gregory Co., LLC v. AgriCap, LLC, ___ F.3d ___, 2010 WL 743590 at *9-10 (4th Cir. Mar. 4, 2010). See also CF Motor Freight v. Schwartz (In re De-Pen Line, Inc.), 215 B.R. 947, 951 (BAnkr. E.D. Pa. 1997) ("[T]he risks which are characteristic of a true sale are not accepted by [the defendant] in the Agreement" and the arrangement merely creates a security interest in the defendant's favor); Major's Furniture Mart, Inc. v. Castle Credit Corp., Inc., 602 F.2d 538, (3d Cir. 1979) (quoting favorably the lower court's opinion, 449 F. Supp. 538, 543 (D. Pa. 1978): "Castle attempted to shift all risks to Major's, and incur none of the risks or obligations of ownership. It strains credulity to believe that this is the type of situation . . . in which 'there may be a true sale of accounts . . . . although recourse exists.'").

Because this invoice purchase agreement is in actuality a financing arrangement, Inova's efforts to perfect its security interest bring it within the scope of the preferential transfer statute.

The Eighth Circuit Court of Appeals recently discussed the avoidance of preferential transfers:

> "Under the Bankruptcy Code's preference avoidance section, 11 U.S.C. § 547, the trustee is permitted to recover, with certain exceptions, transfers of property made by the debtor within 90 days before the date the bankruptcy petition was filed." Barnhill v. Johnson, 503 U.S. 393, 394, 112 S. Ct. 1386, 118 L. Ed. 2d 39 (1992). "This rule 'is intended to discourage creditors from racing to dismember a debtor sliding into bankruptcy and to promote equality of distribution to creditors in bankruptcy.'" Lindquist v. Dorholt (In re Dorholt, Inc.), 224 F.3d 871, 873 (8th Cir. 2000) (quoting Jones Truck Lines, Inc. v. Cent. States, Se. & Sw. Areas Pension Fund (In re Jones Truck Lines, Inc.), 130 F.3d 323, 326 (8th Cir. 1997)).
> "Title 11 U.S.C. § 547(b) requires that in order for a transfer to be subject to avoidance as a preference, (1) there must be a transfer of an interest of the debtor in property, (2) on account of an antecedent debt, (3) to or for the benefit of a creditor, (4) made while the debtor was insolvent, (5) within 90 days prior to the commencement of the bankruptcy case, (6) that left the creditor better off than it would have been if the transfer had not been made and the creditor asserted its claim in a Chapter 7 liquidation." Buckley v. Jeld-Wen, Inc. (In re Interior Wood Prods. Co.), 986 F.2d 228, 230 (8th Cir. 1993). The trustee must establish each of these elements by a preponderance of the evidence. Stingley v. AlliedSignal, Inc. (In re Libby Int'l, Inc.), 247 B.R. 463, 466 (8th Cir. B.A.P. 2000).

Wells Fargo Home Mortgage, Inc. v. Lindquist, 592 F.3d 838, 842 (8th Cir. 2010).

The invoice purchase agreement provides for Inova's continuing security interest in collateral such as accounts, general intangibles, and inventory to protect Inova against any chargeback of disputed or unpaid invoices and any liability resulting from a breach of Qualia's warranties under the agreement.[3]

---

[3]The provision is as follows:

(continued...)

In the application of the § 547(b) test to this case, the only prong that is in dispute is the timing of the transfer and whether the security interest became perfected within the 90 days before the bankruptcy petition was filed.

---

[3](...continued)
3. SECURITY INTEREST/COLLATERAL. As a further inducement for ICF to enter into this agreement, [Qualia] grants to ICF, as collateral for the repayment of any and all obligations and liabilities whatsoever of [Qualia] to ICF, a continuing security interest, under the Uniform Commercial Code, in the following described property hereinafter collectively called "Collateral":

The following types or items of property of [Qualia], whether now owned or hereafter acquired, and wherever located: (a) all Accounts, (b) all Chattel Paper, Documents and Instruments, (c) all General Intangibles, including without limitation, all of [Qualia's] rights (but none of [Qualia's] obligations) in, to and under any and all contracts and agreements, installment sale agreements, all tax refunds, registered and unregistered patents, patent applications, trademarks, trade names, trademark or trade name applications, processes and copyrights; all guarantees, sureties and endorsements of, and letters of credit, bond or credit enhancements securing, [Qualia's] existing and future Accounts and General Intangibles; all security or collateral held or taken by [Qualia] to secure the payment and/or satisfaction of any Account, Instrument, Chattel Paper of [sic] General Intangible including any returned or repossessed goods; and all goods surrendered to [Qualia] at the end of any lease or rental term; (d) all Inventory, including without limitation all tangible personal property held by [Qualia] for sale or lease or to be furnished under contracts of service, tangible personal property that [Qualia] has so leased or furnished, including tangible personal property held by others for sale on consignment from [Qualia], tangible personal property sold by [Qualia] on a sale or return basis, tangible personal property returned to [Qualia] or repossessed by [Qualia] following a sale thereof by [Qualia], tangible personal property constituting "work-in-progress" and raw materials, and tangible personal property represented by a Document of Title or by a certificate of title or certificate of origin, (e) all books, records, tapes, information, data, stored material, computer media, passwords and access codes arising in connection with or related to any of the Collateral, now existing or hereafter acquired, (f) any account maintained by [Qualia] with any ICF and all cash held therein, (g) all Additional Amounts (as such term is defined in Section 7.01), and (h) all proceeds and products of the foregoing, including insurance thereon, and all such Proceeds and Products of the foregoing whether now owned or hereafter acquired, and wherever located. Capitalized terms used herein shall have the meanings given them in the Uniform Commercial Code as enacted in the State of California.

Such obligations and liabilities shall include, but not be limited to, any chargeback of disputed or unpaid invoices/accounts and any liability resulting from any breach of [Qualia's] warranties hereunder. . . . .

The parties' invoice purchase agreement designates California law as the applicable law. Nebraska courts generally give effect to the parties' choice of law. DCS Sanitation Mgmt., Inc. v. Castillo, 435 F.3d 892, 895-96 (8th Cir. 2006); Restatement (Second) of Conflicts of Laws § 187(1).

Under the U.C.C., the security interest should be perfected by filing a financing statement in the debtor's location. Cal. Comm. Code §§ 9301, 9310(a) (West 2007). The location of a debtor that is a registered organization, such as Qualia, is the state in which it was organized; in Qualia's case, Nevada. The financing statement in this case was filed in Nevada within the 90 days preceding Qualia's bankrutpcy, so the transfer on its face is preferential.

Inova takes the position that § 547(c)(5) is an absolute defense to the preference. That section provides:

> (c) The trustee may not avoid under this section a transfer —
>      . . .
>      (5) that creates a perfected security interest in inventory or a receivable or the proceeds of either, except to the extent that the aggregate of all such transfers to the transferee caused a reduction, as of the date of the filing of the petition and to the prejudice of other creditors holding unsecured claims, of any amount by which the debt secured by such security interest exceeded the value of all security interests for such debt on the later of —
>           (A)(i) with respect to a transfer to which subsection (b)(4)(A) of this section applies, 90 days before the date of the filing of the petition; or
>                (ii) with respect to a transfer to which subsection (b)(4)(B) of this section applies, one year before the date of the filing of the petition; or
>           (B) the date on which new value was first given under the security agreement creating such security interest[.]

Inova argues that it was oversecured on all relevant dates, so it could not possibly have improved its lien position to the detriment of unsecured creditors. Inova also argues that, in addition to perfecting its security interest within the preference period, it gave new value at the same time, which excuses the date of the U.C.C. filing.

The preference exception in § 547(c)(5) is intended to protect holders of floating liens on receivables:

> That exception recognizes that a company's specific receivables (and inventory) tend to turn over, often quickly, as the company collects the receivables due (say, from the sale of goods) in one year and (through more sales) generates more receivables due the next year. The exception essentially permits a creditor with, say, a "floating lien" on the "receivables" of such a company to maintain that lien as the specific accounts receivable are paid off, and replaced by new ones, without fear that a future bankruptcy trustee will mount a preference attack on new accounts receivable arising during the "preference" period. The exception protects new receivables from preference challenges, however, only insofar as they substitute for old ones. Insofar as the grant of a security interest in the new collateral (receivables or inventory that

comes into existence during the preference period) improves the creditor's position (compared to his position at the beginning of the preference period), the grant of security constitutes a preference to the extent of the improvement.

Braunstein v. Karger (In re Melon Produce, Inc.), 976 F.2d 71, 75 (1st Cir. 1992).

The calculation of whether an improvement in position has occurred is a two-step process.

The first step . . . is to determine the amount of the loan outstanding 90 days prior to filing and the "value" of the collateral on that date. The difference between these figures is then computed. Next, the same determinations are made as of the date of filing the petition. A comparison is made, and, if there is a reduction during the 90 day period of the amount by which the initially existing debt exceeded the security, then a preference for § 547(c)(5) purposes exists.

Samson v. Alton Banking & Trust Co. (In re Ebbler Furniture & Appliances, Inc.), 804 F.2d 87, 89-90 (7th Cir. 1986).

In this case, Inova's security interest was unperfected 90 days prior to the bankruptcy filing. The security interest was also unperfected on the date it last gave new value to Qualia, which, according to its own evidence, occurred when it purchased invoices on February 5, 2009. Therefore, by filing its U.C.C. financing statement to perfect its lien on February 19, 2009, ICF, Inc., improved its position among Qualia's creditors, to the detriment of unsecured creditors.

The transfer is avoidable under § 547(b) as a preference. It does not fall within the exception of § 547(c)(5). The trustee's motion for summary judgment is granted.

IT IS ORDERED: The defendants' motion for summary judgment (Fil. #32) is denied. The trustee's motion for summary judgment (Fil. #37) is granted. The transfer represented by the February 19, 2009, U.C.C. filing is avoided as a preferential transfer. Separate judgment will be entered.

DATED:    April 6, 2010

BY THE COURT:

Timothy J. Mahoney
United States Bankruptcy Judge

Notice given by the Court to:
    *Brandon R. Tomjack    *Christopher Lee Denison
    *William Brian Memory    *Brian S. Kruse
    U.S. Trustee

Movant (*) is responsible for giving notice to other parties if required by rule or statute.